Minnie V. Ash *vs.* Josephine Isaacson, *Ex'x.*

DECEMBER 22, 1937.

Present: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J.   This is an action of assumpsit brought against the defendant as executrix of the last will and testament of

Edward Isaacson, late of the city of Warwick. The case was tried in the superior court to a jury, which returned a verdict for the plaintiff in the sum of $2200. The defendant has prosecuted a bill of exceptions to this court containing exceptions taken by her to certain rulings of the trial justice made during the course of the trial, to his refusal to direct a verdict in her favor, and to his denial of her motion for a new trial, which motion contained the usual grounds and also the ground of newly discovered evidence.

The record before us shows that the instant case is based on a claim which the plaintiff maintains she has against the estate of Edward Isaacson. It is admitted by the defendant that the plaintiff is properly before the court, and that she has complied with all the necessary formalities in connection with prosecuting her claim, such as filing it in the probate court, showing a disallowance by the executrix and the commencing of suit within the proper time. The plaintiff's claim, which amounts to $3377.50, is founded on an alleged agreement which she contends she entered into orally in September 1917, with her brother and her half brother, who was Edward Isaacson, that said brothers would each pay her the sum of $5 a week for the support and maintenance of the mother of the three parties while she lived with and was taken care of by the plaintiff. The present case is grounded on the breach by Edward Isaacson of this alleged agreement. The defendant herein has denied the existence of any such agreement between the plaintiff and Edward Isaacson, who was the defendant's husband, and has pleaded the general issue, the statute of limitations and the statute of frauds. The last-named defense, however, is not now being pressed.

At the conclusion of all the evidence, the defendant asked that the trial justice direct the jury to return a verdict in her favor, and to the denial of this motion she duly excepted. In support of her motion, the defendant urged that the present action was improperly brought by the plaintiff, who was

a married woman living with her husband at the time the alleged agreement was made, and up to the date of Edward Isaacson's death; and that if any action lay, it could be maintained only by the husband, who was responsible for the support of his family, and entitled to such moneys as might be paid for the support of the plaintiff's mother while living in his household. In our opinion this contention of the defendant is not sound in view of all the facts and circumstances appearing in evidence.

The record shows that the house in which the plaintiff, her husband and her mother lived stood in the name of the plaintiff, and that all the nursing and care given to the mother, who was an elderly woman of large frame and in poor health, was given by the plaintiff personally. Such money as was paid for the mother's support and maintenance was paid directly to the plaintiff. Her husband was not a party to the alleged contract at all, but if made, it was between the plaintiff individually and her two brothers.

The property rights of married women are dealt with in general laws 1923, chapter 290. Section 1 of that chapter provides, among other things, that such property as a married woman may acquire by her own industry shall remain her sole and separate property. Section 3 of the same chapter reads as follows: "A married woman may make any contract whatsoever the same as if she were single and unmarried, and with the same rights and liabilities", and sec. 14 states that: "In all actions, suits and proceedings, whether at law or in equity, by or against a married woman, she shall sue and be sued alone." In view of the obviously broad powers granted by sec. 3, *supra,* the right of the plaintiff, under ordinary circumstances, to enter into an express contract with her brother and half brother, and to enforce all her rights under that contract, cannot well be questioned, but here such right must be considered in its relation to the recognized right of a husband, living in and supporting his

household, to receive all moneys paid for board and lodging furnished therein, except in certain exceptional instances.

In support of her position, the defendant refers us to *Cory* v. *Cook*, 24 R. I. 421. In that case the defendant, a married woman living with her husband, sought to set off, in an action against her on a note, a claim against the plaintiff for boarding and otherwise caring for his minor child. The court held that such a claim in set-off was not proper, as the wife under the circumstances could not recover therefor. The decision in that case followed the established common law principle that there is a presumption that a husband living in and supporting a household is entitled to the money paid for board furnished therein, the wife having no separate business or interest of her own in connection therewith, and there being no agreement or understanding between them to the contrary.

The facts and circumstances appearing in the above case, and those in the instant case, are so unlike that the cases are clearly distinguishable. The wife in the *Cory* case was not resting her claim upon an express contract or agreement, as is the plaintiff in the case at bar. If any contract was involved in the former case, it was in the nature of the implied contract between the plaintiff therein, the father of the child who was being supplied with board, and the defendant's husband, who was furnishing such board. Because of this situation in the *Cory* case, it was not necessary for the court in making its decision, although at that time certain of the statutes giving added rights to married women had already been enacted, to refer to or apply any of such statutes, as they were not brought in issue. The fact, however, that under the evidence in the instant case the plaintiff's claim is founded upon an express contract, renders pertinent the sections of the statutes hereinbefore referred to.

In particular, however, there was no evidence in the *Cory* case that the husband furnished board with the understand-

ing that his wife was to receive the pay therefor as her own, whereas in the instant case a finding that the plaintiff's husband in 1917 had such an understanding with her is supported by reasonable inferences and deductions from the evidence. In this connection it appears from the testimony of the plaintiff's former husband, a witness for the defendant, and who was divorced from the plaintiff at the time of the trial, but who was living with her on friendly terms in 1917, that it was at his suggestion that the plaintiff's mother came to live with them in September of that year. At that time he made no attempt to get money for the mother's support from her sons Frank Stone and Edward Isaacson, and himself made no agreement of any kind with them in relation thereto. He testified that his wife, the plaintiff, ran the house, handled all the finances, and paid all the bills. He further gave evidence that at least twice before 1930 Edward Isaacson paid him $15 for the mother's support, and that the witness gave it to his wife, the plaintiff. The amounts of these payments and the fact that the plaintiff's husband immediately turned them over to her without question, lends support to her contention that an agreement for $5 a week for her mother's support had been entered into by her and her brothers, with her husband's acquiescence. It also appears from the husband's testimony that between 1917 and 1930 he occasionally asked the plaintiff if any money was being paid toward her mother's board, and that his wife told him her brothers were making payments, and that he believed her. It was not until 1930, at which time the plaintiff's husband desired the mother to leave for reasons which are disputed upon the record, that he himself, according to his testimony, took any steps to ascertain what was being done about having the two brothers contribute toward the support of their mother, and learned about an alleged agreement that they were each to pay his wife $4 a week.

It is clear from all this testimony, and from the evidence showing the relations of the parties in 1917 and the years

following and the circumstances under which they lived, that the plaintiff's husband, at the time above referred to, was satisfied to have the plaintiff make whatever arrangements she saw fit about her mother's support and maintenance, and acquiesced and consented to what she had done in that connection. A somewhat similar situation is disclosed in the case of *Wisniewski* v. *Wisniewski's Estate*, 254 Mich. 663, in which the care and maintenance of a child for a period of more than ten years was involved, and in which the court at page 664 held that: "The rule that services of the wife in and about the home belong to the husband is not one beyond the power of the husband to waive. A husband may, by his consent, permit the wife to contract for special services to be rendered another in their home and to receive pay therefor." We find, therefore, in the instant case, taking into consideration all the circumstances and conditions surrounding the parties as disclosed by the evidence presented, that in 1917, and continuing thereafter, there was an understanding between the plaintiff and her husband that she might make whatever agreement she desired with her brothers regarding their contribution to the support and maintenance of their mother, and receive the money paid thereunder as her own.

It has been held in construing sec. 14, *supra,* that if a married woman has a claim jointly with her husband for board and nursing, then that section does not apply, and an action therefor properly should be brought by both. *Mowry* v. *Dean,* 51 R. I. 156. However, when a married woman has a claim apart from her husband and in severalty she should, in order to comply with the provisions of the above section, prosecute the claim alone. *Gencarelle* v. *N. Y., N. H. & H. R. R. Co.,* 21 R. I. 216.

The question of whether or not the plaintiff, in making the alleged contract relied on by her, was acting merely as her husband's agent is not raised in this case. If it were,

it would become a question of fact to be determined from all the evidence and circumstances bearing on that issue.

As the evidence introduced on behalf of the plaintiff tended to prove that the alleged express contract involved herein was entered into by the plaintiff for herself individually, with her husband's acquiescence and consent, there being an understanding to that effect between them, it is our opinion that, under the statutes above set out and under the facts appearing herein, she can properly maintain an action for breach thereof in her own name alone, even though it appears that she was, at the time concerned, a married woman living with her husband. See 46 L. R. A. (N. S.) 238 and 9 A. L. R. 1303, for a general discussion of the point in question and citation of cases. We find, therefore, that the trial justice was correct in denying the defendant's motion for a directed verdict, and her exception to such denial is overruled.

For the reasons above set out, we also overrule the defendant's twelfth exception in so far as it relates to the refusal of the trial justice to grant the second request to charge, which, in general, raises the same questions as were brought in issue by her motion to direct a verdict in her favor.

The admission into evidence of the probate record of the estate of Edward Isaacson, at the instance of the plaintiff and over the defendant's objection, forms the basis for the latter's fifth exception. The defendant had previously admitted for the record that all formal matters relative to the probate of her husband's will, her appointment and qualification as executrix thereof, and the enforcing of the plaintiff's claim had been complied with. The plaintiff, however, offered the disputed evidence in order to show that the defendant was the sole devisee and legatee of her husband's estate, as bearing upon the question of her interest in the present proceedings. The defendant calls our attention to *White* v. *Almy,* 34 R. I. 29, and cases from other jurisdictions in support of her contention that the admission of the pro-

bate record was error, in that such record was not material and tended to prejudice her case.

We have examined the authorities above referred to and find that they do not support the defendant's contention here. In *White* v. *Almy, supra,* an action against the estate of an intestate to recover for the deceased's board and care, certain questions tending to bring out the amount of the deceased's estate were held to have been properly excluded. The other authorities cited are so different from the instant case on their facts that they are clearly distinguishable.

In our judgment, it was proper for the plaintiff to show, if she desired, the defendant's personal interest in her husband's estate under his will, in aid of the plaintiff's contention that the defendant, while sued as executrix, was, for all practical purposes, the real defendant in this case. Furthermore, the defendant testified at the trial, and the evidence in question would relate to her interest in the case, and thus affect her credibility as a witness. In making the proof of the above fact, however, it was necessary to introduce the testator's will only, and in our opinion, it would have been the more correct ruling to have limited the plaintiff's proof to this document, rather than permit to be put in evidence the entire probate record, parts of which were not material to any issue then before the court.

The defendant argues that certain matters in this record, particularly in reference to other claims, including that of the testator's mother, and to her appeal, since disposed of, from the probate of the will, tended to prejudice her. We have examined the whole record, and especially the portions referred to by the defendant, and do not find that its admission could fairly create any such prejudice against the defendant as she claims. Most of the authorities relied on by the defendant deal with the impropriety of giving consideration to the size of the estate against which the claim is being made. It may be noted that no inventory of the testator's

estate was contained in the probate record admitted in this case. We find that the admission of the record in question, under the circumstances appearing herein, did not constitute reversible error, and the defendant's fifth exception is therefore overruled.

In connection with this same matter, the defendant made to the trial justice two requests to charge the jury, both of which were denied in the specific form requested, and such denial is before us under her twelfth exception. These requests are as follows: "4. The wealth, or lack of wealth, of Edward Isaacson and the people to whom he left his estate are not material as tending to prove anything," and "5. The records of the Probate Court of the City of Warwick are only before you for the purpose of showing that the plaintiff duly filed her claim against the estate of Edward Isaacson in the Probate Court; that her claim was disallowed by the defendant in this case, acting as executrix under the last will and testament of Edward Isaacson, deceased; that the plaintiff has brought this suit and that the matter is properly here for trial. Other than for this purpose, the records of the Probate Court of the City of Warwick are not to be considered by you. They have no bearing on the case outside of proving the matters I have mentioned."

An examination of the charge, to which the defendant took no exception, reveals that the trial justice told the jury in substance that the record of the probate court was in evidence for such light as it might give in assisting them to arrive at a decision as to what was the understanding or agreement, if any, between the parties. He also stated that the papers might be of help in showing any interest the parties might have in the proceeding. In our opinion, the refusal of the trial justice to grant the defendant's fourth and fifth requests to charge was not error. There was no evidence in the case bearing upon the wealth or lack of wealth of Edward Isaacson or of his beneficiary, and that subject was not an issue in the case. The fifth request confined too narrowly

the limits within which the jury was entitled to apply the probate records to the issues before them. In particular the extent to which the defendant benefited in her husband's estate under his will appeared from that instrument and bore upon her interest in this litigation. The defendant's twelfth exception, in so far as it relates to the refusal to grant her fourth and fifth requests to charge, is overruled.

Defendant also excepted to the refusal of the trial justice to grant her third request to charge, which was in part as follows: "3. In order for the plaintiff to recover, you must be satisfied by clear, definite and convincing evidence that Edward Isaacson promised the plaintiff . . . ." It appears from the transcript that the trial justice charged on this point in the following language: "The proof, in order to support a verdict against an estate, must be clear and convincing." In *Armour* v. *Doonan*, 55 R. I. 251, we held that proof to support a verdict against an estate must be clear and convincing. We find that the charge as given sufficiently meets the requirements of the law as set out in that case, and that the defendant takes nothing by this exception, which is overruled.

The defense of the statute of limitations is raised by the defendant's exception to the refusal of the trial justice to grant the defendant's first request to charge which is: "1. If you find that Edward Isaacson made any promise to the plaintiff to contribute to the support of his mother while she lived at the Ash home and did not keep his promise, the plaintiff can only recover the sum due for the period of six years next before the death of Edward Isaacson, that is, from March 2, 1928, to September 1933, the last day when the plaintiff says Edward Isaacson owed her anything."

On this issue the plaintiff testified that the promise upon which she relied was made in September 1917. The evidence shows that Edward Isaacson died March 2, 1934. The plaintiff gave evidence that during this intervening period he made no payments of money to her under the alleged agree-

ment. She did testify, however, that frequently during the time between the two above-mentioned dates, Edward Isaac- son stated to her in substance that he would see that she got the money for his mother's support, that he would make the payments as soon as he could, that he would see that she got the money some day, and that at such times he defi- nitely promised that she would be paid. From her testimony, it appears that such statements were made at intervals of about three or four months, usually on occasions when he was visiting his mother at the plaintiff's house, and grew out of a conversation regarding the providing for the support and maintenance of the mother.

The plaintiff further testified that the last time he made such a promise to her was about Christmas time in 1933, and that at no time did he ever repudiate the agreement or deny that he owed her the money in question. She also gave evi- dence that, as a reason for not paying her, he stated, among other things, that his money was tied up in real estate and that he was putting up a building. It further appears from plaintiff's testimony that the relations between herself and Edward Isaacson were friendly; that she did not press him because she did not wish to injure his business, and because she trusted him; and that several times each year during the period in question she did ask him to pay her according to the alleged agreement. In many of the essential parts of her testimony, plaintiff was corroborated by her brother, Frank Stone. Further, evidence introduced for the defend- ant was to the effect that both before and after 1930, certain payments had been made to the plaintiff by Edward Isaac- son for the support and care of their mother.

In relation to her defense of the statute of limitations, the defendant contends that if any such contract as the plaintiff claims was entered into, then each promised payment con- stituted a separate agreement, and that a right of action accrued to the plaintiff upon the failure of Edward Isaacson

to pay each week. The defendant cites *Messier* v. *Messier*, 34 R. I. 233, to support her position. That case differs in essential particulars from the case at bar. In the *Messier* case, the evidence showed that the agreement upon which the plaintiff was suing was to be performed by the defendant at her death only, by leaving property to the plaintiff by will. It also appeared in that case that the defendant, who was still living, clearly repudiated the alleged agreement by otherwise disposing of her property. The court held that a cause of action accrued to the plaintiff and that the statute of limitations began to run from the time of the repudiation. The matter of entire or severable contracts is not dealt with directly in the opinion. In the present case, the alleged agreement contemplated payments by Edward Isaacson from time to time during his life. In addition, no evidence was introduced of any express repudiation by him of the agreement involved, and none can reasonably be implied from his conduct in the matter. Further, no questions of payments on account, or of acknowledgments of or promises to pay an existing debt by a defendant were involved in the *Messier* case, as they are in the instant case.

It is well settled in this state that an acknowledgment of an existing debt avoids the statute of limitations. In *La France* v. *Moquin*, 49 R. I. 152, the court stated: "An unqualified acknowledgment of an existing debt is conclusive as an avoidance of the statute." The defendant is not aided, therefore, in view of the evidence in the present case, even if we assume as correct her contention that the alleged agreement was severable, and that an immediate cause of action accrued to the plaintiff upon the first failure of Edward Isaacson to pay her. In addition to the evidence for the defendant, hereinbefore referred to, showing payments by Edward Isaacson to the plaintiff for their mother's account, evidence for the plaintiff tended to prove frequent acknowledgments of the plaintiff's claim, and new promises concerning the same on the part of Edward Isaacson. The issue of

whether or not such acknowledgments and promises had been made was properly left to the jury by the trial justice under instructions as to the effect of such acknowledgments and promises. Therefore, under the evidence appearing in this case, the defendant's first request to charge was not proper, and the ruling of the trial justice in denying such request was correct. The defendant's exception to his action in this regard is overruled.

The defendant's first ten exceptions are to rulings on evidence made by the trial justice during the course of the trial, and to his action in striking out or refusing to strike out certain answers already on the record. The defendant's fifth exception has heretofore been considered. The other nine of the above exceptions have been examined and found to be without merit and are overruled.

The defendant's remaining exception is to the denial by the trial justice of her motion for a new trial. Evidence for the plaintiff tended to show the making of the alleged agreement by the three parties in the plaintiff's home in September 1917, at which time the mother came there to live, and the periods between that time and March 1934 during which the plaintiff actually supported and maintained her. The plaintiff also testified that her brother Frank had performed his part of the alleged agreement and had paid $5 a week toward his mother's support and care while she was with the plaintiff. There were times, however, during this period when the mother lived with Frank or boarded with others.

For the defendant, evidence was introduced tending to prove that Edward Isaacson made no agreement in 1917 with the plaintiff concerning the support and care of their mother; that following 1917 he did what he could to help support her by voluntary payments at irregular intervals, by paying all her doctor's bills and her board when she lived with strangers, by furnishing her with clothing at different times; and that he was a man who was in the habit of paying his obligations. The plaintiff's former husband gave

evidence, among other things, that she said nothing to him in 1917 nor afterwards until 1930 about any agreement she had made with Edward Isaacson and her brother Frank concerning contributions toward their mother's support. This witness also testified that in 1930, after he had taken steps to have Mrs. Stone, the mother, leave the house where he and his wife were living, he talked with Edward Isaacson regarding the care and support of his mother, whereupon the plaintiff told him that Edward Isaacson and Frank had each agreed to pay her $4 a week toward the care and maintenance of their mother while she stayed with the plaintiff, and that thereafter the witness saw Edward Isaacson pay money several times to the plaintiff.

The conflicting evidence on the material issues in this case clearly presented questions of fact to be determined by a jury. The amount of the verdict would tend to indicate that, while the jury accepted the plaintiff's evidence as to the making of an agreement, they also gave consideration to the evidence for the defendant that Edward Isaacson had made certain payments to the plaintiff for the care and support of his mother, and that the plaintiff, on her own showing, was not entitled to recover for periods when the mother lived elsewhere. The trial justice, who had the benefit of seeing and hearing the witnesses testify, approved the verdict and found that it was supported by the preponderance of the evidence in the case. From our examination of the record, we cannot say that he was clearly wrong in so holding.

In respect to the matter of newly discovered evidence as a ground for granting the defendant's motion for a new trial, it appears that the affidavits in support of such motion were not filed until the day of the hearing on the motion. The plaintiff objected to having them considered by the trial justice, on the ground that they were not properly before him because they were not filed in accordance with the provisions of Rule 18 of the superior court. That rule provides

in substance that on such a motion the moving party shall file his affidavits in support of his motion, at least five days before the date set for hearing. The reason for the rule is obviously to give the opposing party an opportunity to learn of the new matter upon which the moving party is relying, and to permit the filing of counter affidavits if necessary.

The trial justice ruled that, as the affidavits in question were not filed in accordance with the rule of court, and as the plaintiff had objected to having them considered, the defendant could not rely upon them in pressing her motion. In our opinion, the above ruling of the trial justice was correct under the existing circumstances. Nothing appears on the record to show that any continuance of the hearing was requested by the defendant in order to enable her to come within the rule, and thus make it possible for the trial justice to properly pass upon the affidavits. While he did discuss them to some extent in his rescript denying the defendant's motion for a new trial, in our judgment the affidavits were not properly before him and, therefore, are not now before us for consideration. Other than these affidavits, no newly discovered evidence was presented by the defendant in support of this ground of her motion, and the action of the trial justice in denying such motion, in so far as it was based on such ground, was proper. We find no error in the refusal of the trial justice to grant the defendant's motion for a new trial on all the grounds urged by her, and her exception to such refusal is overruled.

All of the defendant's exceptions are overruled and the case is remitted to the superior court for the entry of judgment on the verdict.

*Quinn, Kernan & Quinn, Clinton G. Clough, Michael DeCiantis,* for plaintiff.

*William B. Sweeney, John J. Cosgrove,* for defendant.